**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SUSAN EVERETT,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **THE MATERNAL CHILD** | **NO. 18-746** |
| **CONSORTIUM, LLC, and ASSOCIATES** | |
| **HOME CARE, INC.,** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Susan Everett alleges that Defendants The Maternal Child Consortium ("MCC") and Associates Home Care ("AHC") paid her below the legally required minimum, refused to accommodate her legal disabilities, and fired her because of those disabilities. She brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 Pa. C.S.A. §§ 333.101 *et seq.* Pending now is Defendants' motion to dismiss. In their motion, Defendants argue that (1) the ADA claim is barred with respect to Defendant MCC because Plaintiff did not exhaust her administrative remedies, (2) the ADA claim is untimely with respect to Defendant AHC, (3) Plaintiff has not pled a "willful" violation under the FLSA, and (4) Plaintiff has failed to plead facts stating a claim for compensable on-call time under the FLSA or PMWA. For the reasons that follow, Defendants' motion will be denied.

## I.    FACTS

Plaintiff is a resident of Pennsylvania who worked as a Scheduler for Defendants from 2004 until 2016. Defendant MCC is a limited liability company and Defendant AHC is a corporation; both are authorized under the laws of Pennsylvania and are registered at the same

address.  Some of the same individuals are officers of both entities.  Plaintiff's pay stubs listed AHC as the entity paying her, but Plaintiff's supervisor communicated with her using MCC letterhead.

While employed by Defendants, Plaintiff worked about 41.5 hours per week at Defendants' worksite.  Beyond those 41.5 hours, Plaintiff also spent some time "on call": Although she was permitted to leave her home, she was required to carry her work phone and schedule with her, and to answer up to three or four work calls per on-call period.  Plaintiff was not paid 1.5 times her regular wage when she worked more than 40 hours in a given week.

During Plaintiff's employment, Defendants automatically deducted thirty minutes of time from each of Plaintiff's shifts for meal breaks.  Although Plaintiff's breaks were interrupted by work approximately three times per week, she was not compensated for the time during breaks she was required to work.

In the summer of 2016, Plaintiff was diagnosed with Lofgren Syndrome, an ailment that impaired her ability to stand, sit, walk and breathe.  She took a leave of absence beginning in July of that year.  While on leave, Plaintiff kept in contact with Defendants via telephone, text message, and e-mail.

In or around early October 2016, Plaintiff informed Defendants that her rheumatologist would soon allow her to return to work; Defendants' Operations/Compliance Manager, however, told Plaintiff that she would only accept return-to-work documentation from a podiatrist. Plaintiff asked her podiatrist for an evaluation, but the podiatrist could not schedule an appointment until October 17.  When Plaintiff relayed to the Manager that the evaluation could take place no earlier than October 17, the Manager told Plaintiff that she was required to provide return-to-work authorization from the podiatrist by October 7.  In the course of the conversation,

the Manager told Plaintiff "If you don't have a release note, you can't come back[,]" and "I would think if the doctor knew you're going to lose your job they would get you in and get you a note."

Defendants fired Plaintiff on October 13, 2016.

## II.     PROCEDURAL HISTORY

On February 3, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission, naming "Associates Home Care, Inc. d/b/a Maternal Child Consortium" as her employer.[1]  On December 11, 2017, she received a Notice of Right to Sue from the EEOC, advising her that she had 90 days to file suit against Defendant AHC.  She proceeded to file a Complaint against Defendant MCC on February 16, 2018.  Defendant MCC then filed a motion to dismiss, which this Court granted in part and denied in part.  *See Everett v. Maternal Child Consortium, LLC*, 2018 WL 3374763 (E.D. Pa. July 10, 2018).  Plaintiff then filed an Amended Complaint.  The Amended Complaint added Defendant AHC to the lawsuit, and added certain factual allegations.  Defendants then filed the instant motion to dismiss.

## III.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare" recitations of the elements of a claim supported only be "conclusory statements" will not suffice.

---

[1] This fact is drawn directly from the Charge of Discrimination that Plaintiff submitted to the EEOC.  Plaintiff attached this document to her Memorandum in Opposition to the Motion to Dismiss.  As Defendants do not dispute its authenticity, the Court may consider the Charge.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

*Id.* at 683. Instead, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

## IV. DISCUSSION

### A. ADA Claims Against MCC

As a general matter, before suing under the ADA a plaintiff must exhaust her administrative remedies with the EEOC. 42 U.S.C. § 2000e-5; *see Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999). Part of that requirement is that the plaintiff must name the defendant in a charge before the EEOC. *See Glus v. G. C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977).

The naming aspect of exhaustion exists to "give notice to the charged party," *id.* at 888, to "enable the EEOC to investigate," *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999) (citing *Hicks v. ABT Assocs. Inc.*, 572 F.2d 960, 963 (3d Cir. 1978)), and to allow the EEOC "the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court," *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). Therefore, where a party does not name the particular defendant in an EEOC charge, exhaustion will not be required "when the unnamed party received notice and when there is a shared commonality of interest with the named party." *Schafer v. Bd. of Pub. Educ.*, 903 F.2d 243, 252 (3d Cir. 1990) (citing *Glus*, 562 F.2d at 888).

As stated *supra*, Plaintiff's original Charge of Discrimination to the EEOC listed her employer as "Associates Home Care, Inc. d/b/a Maternal Child Consortium." Defendants assert that this Charge is inadequate because it only lists MCC as a pseudonym under which AHC was doing business.

Although Plaintiff did not list MCC as a separate party, explicitly naming MCC in the Charge sufficiently put the EEOC and the parties on notice of the entities involved and gave the EEOC the opportunity to investigate and attempt conciliation for all parties.  In any event, even if Plaintiff had not exhausted her administrative options, she would still satisfy the *Schafer* exception (although Plaintiff does not apply the exception in her briefing).  Plaintiff alleges in her complaint that AHC and MCC are registered with the Pennsylvania Secretary of State at the same address, have overlapping officers, and that employees of the organizations hold themselves out as affiliated with both organizations.  Taking these allegations as true, Plaintiff has adequately pled both notice and commonality of interest.  *See Schafer*, 903 F.2d at 252.

### B.  ADA Claim Against AHC

"In ADA cases, a plaintiff must file suit within ninety days of receiving a right-to-sue letter from the EEOC."  *Dempsey-Lowden v. Levittown-Fairless Hills Rescue Squad, Inc.*, 2018 WL 398296, at *4 (E.D. Pa. Jan. 11, 2018) (citing *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 n.4 (3d Cir. 2003)); *see also* 42 U.S.C. § 2000e-5(f)(1).  Plaintiff received her right-to-sue letter on December 11, 2017.  But it was only on August 14, 2018, more than ninety days after receiving the letter, that Plaintiff filed the Amended Complaint, which included—for the first time—Defendant AHC in the lawsuit.  Defendants argue that because AHC was not added until more than ninety days after Plaintiff received the letter, the ADA claim against AHC is time-barred.  Plaintiff, however, contends that her claim against AHC survives because it relates back to the date that she filed her original Complaint—which fell within the ninety-day statutory period.

The "relation back" doctrine is governed by Federal Rule of Civil Procedure 15(c), which, as relevant here, provides that an amendment adding a defendant against whom the claim

is asserted will relate back to the original complaint when three conditions are satisfied: (1) "The amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading," (2) Within ninety days of filing the complaint, the party to be added "received such notice of the action that it will not be prejudiced in defending on the merits," and (3) Within ninety days of filing the complaint, the party to be added "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Defendants contend that the ADA claim against AHC cannot relate back because Plaintiff "knew of the identity and possible role" of AHC, *Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F. Supp. 979, 987 (E.D. Pa. 1993), and therefore cannot show that there was "a mistake concerning the proper party's identity," Fed. R. Civ. P. 15(c)(1)(C)(ii).

The Supreme Court has explained both the analysis that Rule 15(c) requires and the meaning of "mistake" within that context. In *Krupski v. Costa Crociere S. p. A*, 580 U.S. 538 (2010), the Court stated that "the question . . . is not whether [the plaintiff] knew or should have known the identity of [the defendant] as the proper defendant, but whether [the defendant] knew or should have known that it would have been named as a defendant but for an error," and therefore that the "[i]nformation in the plaintiff's possession is relevant *only* if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* at 548-49 (emphasis added). Addressing the meaning of the word "mistake," the Court explained that while "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties" could constitute a mistake, it does not follow that if a plaintiff "knows of a party's existence [she is] preclude[d] from making a mistake with respect to that party's identity." *Id.* at 549. Consistent with

*Krupski*, courts within this Circuit generally hold that "the mistake requirement is met where the 'original party and the added party have a close identity of interests,'" *State Farm Mut. Auto. Ins. Co. v. Red Lion Med. Ctr., Inc.*, 2001 U.S. Dist. LEXIS 24101, at *16 (E.D. Pa. Oct. 17, 2001) (quoting *Johnson v. Goldstein*, 850 F. Supp. 327, 330 (E.D. Pa. 1994)), such that the added party "knew (or should have known) that [its] joinder was a distinct possibility," *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1457 (E.D. Pa. 1992) (quoting *Taliferro v. Costello*, 467 F. Supp. 33, 36 (E.D. Pa. 1979)).

Plaintiffs have pleaded sufficient facts to show that AHC and MCC have a "close identity of interests," *Red Lion*, 2001 U.S. Dist. LEXIS 24101, at *16, and that AHC "should have known that it would have been named as a defendant but for an error," *Krupski*, 560 U.S. at 548. For one, Plaintiff adequately alleges an "identity of interests" by pleading that both AHC and MCC are registered with the Pennsylvania Department of State at the same address, that the two entities have some overlapping officers, and that Plaintiff's supervisor represented herself as affiliated with both AHC and MCC. And Defendants have not shown that Plaintiff's failure to name AHC in the original Complaint was anything more than a mistake—or, in other words, Defendants have not offered any reason to believe that Plaintiff "ma[de] a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties." *Id.* at 549. Nor have Defendants offered any reason why they would be prejudiced by Plaintiff's failure to name AHC in the original Complaint. *See* Fed. R. Civ. P. 15(c)(1)(C)(i). While Defendants emphasize that Plaintiff named AHC in her EEOC charge— and therefore that she was aware of AHC's existence—this observation is insufficient to show that Plaintiff understood the relevant "factual and legal differences" between AHC and MCC. *Krupski*, 580 U.S. at 549; *see id.* at 548 ("[I]t would be error to conflate knowledge of a party's

existence with the absence of mistake.").  Indeed, the conclusion is bolstered by Plaintiff's allegations that Defendants presented themselves in inconsistent ways that would have obscured relevant differences between them (*e.g.*, pay stubs indicated one entity while corporate letterhead indicated another).  As a result, Plaintiff's ADA claim against AHC will not be dismissed on timeliness grounds.

### C.  Willful Violation of the FLSA

Plaintiff asserts that Defendants refused to pay her overtime in violation of the FLSA during the twelve years she worked for them.  Claims under the FLSA ordinarily must be filed "within two years after the cause of action accrued," with the caveat that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "Willfulness" means that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128-29 (1985)); *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d Cir. 1991) (describing an employer's "evident indifference" to FLSA requirements as "fully consistent" with a willful violation).  Defendants argue that Plaintiff has not pled a "willful" violation and therefore that claims that accrued more than two years before the Complaint was filed (*i.e.*, claims that accrued prior to February 18, 2016) are barred.

Plaintiff alleges that she complained about not being paid overtime, and in response was told "We don't pay overtime."  "Willfulness" for purposes of the three-year statute of limitations can be shown through "complaints to supervisors about having to work off the clock which were rebuffed or ignored," *Mell v. GNC Corp.*, 2010 WL 4668966, at *8 (W.D. Pa. Nov. 9, 2010), "cognizan[ce] that [employees] were working overtime hours," *Albanese v. Bergen Cnty.*, 991 F.

Supp. 410, 425 (D.N.J. 1997), and failure to "make a good faith effort" to determine whether conduct violates the FLSA, *Solis v. A-1 Morg. Corp.*, 934 F. Supp.2d 778, 810 (W.D. Pa. 2013). Taken in the light most favorable to her, Plaintiff's allegations demonstrate that Plaintiff believed she was entitled to overtime and that she had told Defendants of that belief, but that Defendants were unwilling to investigate whether they indeed were required to pay overtime. Therefore, Plaintiff's allegations adequately plead a "willful" violation of the FLSA, and Defendants' motion to dismiss claims accruing prior to February 18, 2016 will be denied.

### D. On-Call Work

Defendants argue that Plaintiff has not stated a claim to relief for her "on call" work under either the FLSA or the PMWA because she has not adequately alleged that such time was compensable. The Third Circuit adheres to a four-factor test to determine whether time spent by an employee waiting on call is compensable: "[F]irst, whether the employee may carry a beeper or leave home; second, the frequency of calls and the nature of the employer's demands; third, the employee's ability to maintain a flexible on-call schedule and switch on-call shifts; and fourth, whether the employee actually engaged in personal activities during on-call time." *Ingram v. County of Bucks*, 144 F.3d 265, 268 (3d Cir. 1998). If an analysis of those factors "reveal[s] onerous on-call policies and significant interference with the employee's personal life," then the time can be compensable. *Id.* This Court dismissed Plaintiff's original Complaint because it contained only the allegation that she "performed compensable on-call work," which, as a bare legal conclusion, did not pass muster. *See Everett*, 2018 WL 3374763, at *4.

Now, however, Plaintiff has supplemented her earlier legal allegation with factual allegations as well. She claims that she "was required to carry her work cell phone on her person at all times," that she "received up to three (3) to four (4) calls during her on-call time per day,"

and that when she left her home "she was required to carry Defendants' schedule on her person at all times." Defendants respond by asserting that Plaintiff has not adequately shown that the policy was "onerous." But whether the interference was onerous is a question of fact that must be proven at trial. Hence, the motion to dismiss will be denied as to the on-call time.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**_____**

**Date: October 31, 2018**                    **WENDY BEETLESTONE, J.**